UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TYRONE WALLACE, CDCR #P-48941,<br><br>         Plaintiff,<br><br>vs.<br><br>RUNDLE, RJD DDP Psy.D; ZUDIKER, RJD DDP Psy.D; and J. LEWIS, CCCHS, Third Level Deputy Director,<br><br>         Defendants. | Case No.: 3:16-cv-2233-BAS-DHB<br><br>**ORDER:**<br><br>**1) DENYING MOTIONS FOR RECONSIDERATION AND APPOINTMENT OF COUNSEL (ECF Nos. 15, 21);**<br><br>**2) GRANTING MOTIONS FOR LEAVE TO AMEND AND/OR SUPPLEMENT SECOND AMENDED COMPLAINT (ECF Nos. 17, 23);**<br><br>**AND**<br><br>**3) DISMISSING CIVIL ACTION FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)** |

   Plaintiff Tyrone Wallace, who is currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD") in San Diego, California, and is proceeding pro se and in forma pauperis, has filed this civil rights action pursuant to 42 U.S.C. § 1983. He seeks

both injunctive relief and money damages against two RJD clinical psychologists (Defendants Rundle and Zudiker), and the Deputy Director of California Correctional Health Care Services ("CCHCS") (Defendant Lewis), based on claims that they violated his Fourteenth Amendment rights by refusing to designate him as a "DPP" prisoner.[1] (ECF No. 7 at 4-9, 13-14, 55, 57; ECF No. 13 at 3-7.)

## I. Procedural History

On December 8, 2016, the Court dismissed Plaintiff's First Amended Complaint ("FAC") (ECF No. 7) sua sponte for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A. (ECF No. 12.) Because he is proceeding without counsel, the Court also apprised Plaintiff of his pleading deficiencies and granted him leave to amend.

---

[1] The Disability Placement Program ("DPP") was developed as the result of the class action lawsuit *Armstrong v. Brown*, No. C 94-2307 CW (N.D. Cal. 1994). *Armstrong* was filed by a "class of all present and future California state prison inmates and parolees with disabilities [who] sued California state officials in their official capacities, seeking injunctive relief for violations of the [Rehabilitation Act of 1973] and the ADA [Americans with Disabilities Act] in state prisons." *Armstrong v. Wilson*, 124 F.3d 1019, 1021 (9th Cir. 1997). The *Armstrong* court eventually certified the class to include "all present and future California state prisoners and parolees with mobility, sight, hearing, learning, developmental and kidney disabilities that substantially limit one or more of their major life activities." *Armstrong v. Brown*, 857 F. Supp. 2d 919, 924 (N.D. Cal. 2012). The *Armstrong* Remedial Plan ("ARP") established the DPP as the CDCR's "set of plans, policies, and procedures to assure nondiscrimination against inmates/parolees with disabilities," and applies "to all inmates who have disabilities that affect a major life activity whether or not the disabilities impact placement." *Tunstall v. Knowles*, No. 2:08-cv-3176 WBS KJN P., 2015 WL 1013445, at *2 (E.D. Cal. March 6, 2015). Under the ARP, "[i]nmates with permanent mobility, hearing, vision, and speech impairments, or other disability or compound conditions severe enough to require special housing and programming, will be assigned to special placement in a designated DPP facility. Inmates with a permanent impairment of lesser severity, learning disability, or a kidney disability, may be assigned to any Department's institutions/facilities (designated DPP institutions or non-designated DPP institutions) consistent with existing case factors." *Id.*; *see also Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001); *Armstrong*, 124 F.3d at 1026 (affirming order requiring submission of a remedial plan for compliance by the CDCR with the ADA, 42 U.S.C. §§ 12131–34, and the Rehabilitation Act, 29 U.S.C. § 794, in California prisons).

(*Id.* at 4-9.) Plaintiff responded by filing a Second Amended Complaint ("SAC") (ECF No. 13), a Motion for Reconsideration of the Court's December 8, 2016, Order (ECF No. 15), two subsequent motions seeking leave to amend and/or supplement the causes of action already alleged in his SAC (ECF Nos. 17, 23), and a Motion for Appointment of Counsel (ECF No. 21).

The Court will address each of Plaintiff's Motions in turn, and in conjunction with the sua sponte screening of his SAC as required by 28 U.S.C. § 1915(e)(2) and § 1915A(b).

## II. Motion for Reconsideration

### A. Plaintiff's Claims

On December 29, 2016, and within the 28 days permitted to file an application for reconsideration pursuant to Civil Local Rule 7.1(i)(2) or a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e), Plaintiff filed a Motion for Reconsideration of the Court's December 8, 2016, Order. (ECF No. 15.) Plaintiff argues the Court issued a "bias[ed] and prejudicial ruling" by finding his FAC failed to state a Fourteenth Amendment claim, because he "cite[d] and state[d] and show[ed] exhibits" which demonstrate he has "3d grade" handwriting and an "educational handicap." (*Id.* at 2-3). Plaintiff further argues reconsideration is warranted because the Court failed to rely on specific exhibits attached to his FAC, which he claims prove Defendants "lied" by finding him ineligible for DPP placement. (*Id.*)

### B. Standard of Review

An order that resolves fewer than all of the claims among the parties "is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b); *see also* Civ. L. R. 7.1(i)(1) (authorizing applications for reconsideration of "any motion . . . for any order or other relief [that] has been made to any judge and has been refused in whole or in part . . . ."). However, reconsideration is an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Kana Enters., Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000); *Century Indem. Co. v. Marine Grp., LLC,* No. 3:08-CV-1375-

AC, 2016 WL 96147, at *2 (D. Or. Jan. 7, 2016). Generally, reconsideration is only appropriate where there has been an intervening change in controlling law, new evidence has become available, or it is necessary to correct clear error or prevent manifest injustice. *See Sch. Dist. No. 1J, Multnomah Cty., Or. v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

In the absence of new evidence or a change in the law, a party may not use a motion for reconsideration to raise arguments or present new evidence for the first time when it could reasonably have been raised earlier in the litigation. *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003); *see also Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999); *United States v. Munguia*, No. 1:08-CR-000228-LJO-1, 2016 WL 1452011, at *1 (E.D. Cal. Apr. 13, 2016). Motions to reconsider are also "not vehicles permitting the unsuccessful party to 'rehash' arguments previously presented." *United States v. Navarro*, 972 F. Supp. 1296, 1299 (E.D. Cal. 1997), *rev'd on other grounds*, 160 F.3d 1254 (9th Cir. 1998). Ultimately, a party seeking reconsideration must show "more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden." *United States v. Westlands Water Dist.*, 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) (citations and internal quotation marks omitted); *Wood v. Carey*, No. 2:04-CV-1225 MCE AC, 2015 WL 4617773, at *3 (E.D. Cal. July 31, 2015). "While a motion for reconsideration allows a party to bring a material oversight to the court's attention, it is not appropriate for a party to request reconsideration merely to force the court to think about an issue again in the hope that it will come out the other way the second time." *Brown v. S Nev. Adult Mental Health Servs.*, 2014 WL 2807688, at *2 (D. Nev. 2014) (internal quotation marks omitted); *see also Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006).

That is what Plaintiff essentially seeks here—he disagrees with the Court's December 8, 2016, conclusion that his FAC failed to allege facts sufficient to support a Fourteenth Amendment claim, and he re-directs the Court to exhibits originally attached to

his FAC in hopes that the Court might change its mind as to whether they provide "factual content that allows the court to draw the reasonable inference that the defendant[s] [are] liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). They do not. *See* ECF No. 15 at 2-4. Therefore, because Plaintiff points to no intervening change in the law, material oversight, or any error whatsoever, his Motion for Reconsideration is denied.

### III. Motion for Appointment of Counsel

Plaintiff also requests that the Court appoint him counsel due to his "bad handwriting," "low education," and "learning disability." (ECF No. 21 at 3-4).[2]

All documents submitted by any pro se litigant, no matter how "inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But there is no constitutional right to counsel in a civil case, and nothing in Plaintiff's latest filings suggest the Court should exercise its limited discretion to request that an attorney represent him pro bono pursuant to 28 U.S.C. § 1915(e)(1). *See Lassiter v. Dept. of Social Servs.*, 452 U.S. 18, 25 (1981); *Agyeman v. Corr. Corp. of Am.*, 390 F.3d 1101, 1103 (9th Cir. 2004). Only "exceptional circumstances" support such a discretionary appointment. *Terrell v. Brewer*, 935 F.3d 1015, 1017 (9th Cir.

---

[2] The Court notes that Plaintiff has filed the same motion in three other civil actions he has been simultaneously and actively litigating in the Southern District of California, but none of which appear to involve claims duplicative of those he alleges in this case. *See Wallace v. Olson*, No. 16-cv-01917-AJB-NSL (S.D. Cal. filed July 27, 2016), ECF Nos. 7, 15 (alleging access to courts violations arising at RJD in February and March 2013 related to Plaintiff's attempts to file an inmate CDC 602 appeal of a 2012 disciplinary conviction); *Wallace v. Sosa*, No. 16-cv-01501-BAS-BGS (S.D. Cal. filed June 15, 2016), ECF Nos. 7, 17 (alleging access to courts violations arising at RJD in December 2014 through August 2015 related to Plaintiff's single-cell status ); and *Wallace v. Olivarria*, No. 3:16-cv-01808-BAS-PCL (S.D. Cal. filed July 12, 2016), ECF Nos. 20, 25 (alleging free exercise of religion, RLUIPA, and access to courts claims arising at RJD in 2016). To date, neither this Court nor Judge Battaglia has found Plaintiff entitled to the appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1) in any of his cases.

1991); *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009). Exceptional circumstances exist where there is a showing of both a likelihood of success on the merits and a demonstrated inability of the pro se litigant to articulate his claims in light of their legal complexity. *Id.*

To date, and in this case alone, Plaintiff has filed three complaints (ECF Nos. 1, 7, 13), five subsequent addenda and/or motions seeking leave to amend or supplement the causes of action included in those complaints (ECF Nos. 4, 9, 11, 17, 23), and a motion for reconsideration (ECF No. 15)—all of which contain factual allegations, legal arguments and voluminous exhibits in support. These pleadings together and alone demonstrate that while Plaintiff may not be formally trained in law, and may suffer from a "learning disability," (ECF No. 21 at 3), he has nevertheless shown he is fully capable of legibly articulating the facts and circumstances relevant to his Fourteenth Amendment claims, which are typical, straightforward, and not legally "complex." *Agyeman*, 390 F.3d at 1103; *see also Meeks v. Nunez*, No. 13cv973-GPC(BGS), 2017 WL 476425, at *4 (S.D. Cal. Feb. 6, 2017) (denying appointment of counsel pursuant to § 1915(e)(1) where prisoner's "alleged mental disability ha[d] not affected his ability to articulate his arguments and prosecute his case"). Finally, for the reasons discussed below, Plaintiff has also not shown he is likely to succeed on the merits, because none of his pleadings state a plausible claim for relief. *Id.*; *see also Cano v. Taylor*, 739 F.3d 1214, 1218 (9th Cir. 2014).

Therefore, Plaintiff's Motion for Appointment of Counsel (ECF No. 21) is denied.

**IV.     Motions for Leave to Amend/Supplement Causes of Action**

After he filed his SAC, Plaintiff filed two subsequent motions seeking leave to amend the causes of action previously alleged in his SAC and to add exhibits. (ECF Nos. 17, 23.) He has also submitted a memorandum of points and authorities. (ECF No. 19.) Plaintiff asks the Court to substitute several pages of his SAC, in which he alleges the supporting facts relevant to "Count 1" and "Count 2," for a revised set of pages attached to his motions. (*See* ECF No. 17 "Ex. 1" at 6-7; ECF No. 19 "Ex. 1" at 5.) He also asks the Court "add Ex. 14-15," (ECF No. 23 at 6-24) to his SAC (ECF No. 13), so they may be

considered during its screening. (ECF No. 23 at 4.)

Civil Local Rule 15.1(a) provides that "[e]very pleading to which an amendment is permitted as a matter of right or has been allowed by court order, must be complete in itself." Pro se litigants are required to follow the same rules as parties who are represented by counsel. *See Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). However, "district courts have broad discretion in interpreting and applying their local rules," *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (internal quotation marks and citation omitted), and the Court must construe the pleadings of a pro se litigant in a civil rights case liberally, affording him the benefit of doubt. *See Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988); *Bretz v. Kelman*, 773 F.2d 1026, 1027, n.1 (9th Cir. 1985) (en banc).

Based on these standards, in light of Plaintiff's pro se status, and in consideration of his alleged learning disability, the Court grants Plaintiff's motions to amend and/or supplement and will consider his substitute pages and supplemental exhibits together as part of his SAC for purposes of screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A.

## V. Screening of Second Amended Complaint

### A. Standard of Review

Because Plaintiff remains a prisoner and is proceeding IFP, his SAC also requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

"The purpose of § 1915A is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680, 681 (7th Cir. 2012)). "The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012).

Thus, in deciding whether Plaintiff has stated a plausible claim for relief, the Court may consider exhibits attached to, and in this case, later filed in order to supplement his SAC. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a

pleading is a part of the pleading for all purposes."); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citing *Amfac Mortg. Corp. v. Ariz. Mall of Tempe, Inc.*, 583 F.2d 426 (9th Cir. 1978) (noting material which is properly submitted as part of the complaint may be considered" in ruling on a Rule 12(b)(6) motion to dismiss)).

### B. Plaintiff's Allegations

Plaintiff's Fourteenth Amendment claims[3] are substantially the same as previously alleged in his FAC. Specifically, he claims Defendant Zudiker, who "worked as [an] RJD developmental disability program [DPP] psychologist," "discriminated against [him] by lying" on July 28, 2015, misreporting Plaintiff's educational background ("TABE score"), and concluding he did not "present with any significant cognitive deficits" which might require a DPP placement. *See* ECF No. 13 at 2, 3 & Ex. 3; ECF No. 17 at 6; ECF No. 19 at 5.[4]

---

[3] In each of his Complaints, Plaintiff has clearly and consistently based his "equal protection" claims on grounds of "Fourteenth Amendment discrimination." *See* ECF No. 1 at 3-6; ECF No. 7 at 4-9; ECF No. 13 at 3-5. He does *not* and has never alleged Defendants Zudiker, Rundle, or Lewis violated his Eighth Amendment right to adequate mental health care. *See Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002) ("[T]he Eighth Amendment is violated when prison officials demonstrate 'deliberate indifference to serious medical needs.'") (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Even if he had invoked the Eighth Amendment, however, Plaintiff's claims would fail—for a mere "difference of medical opinion" between him and his treating psychologists as to a diagnosis or his need for psychological treatment is "insufficient, as a matter of law, to establish deliberate indifference." *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004) (citing *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

[4] Plaintiff does not attach to his SAC (ECF No. 13) or any of his motions to amend (ECF Nos. 17, 19, 23), Dr. Zudiker's July 28, 2015, "Interdisciplinary Progress Notes"—the CDCR MH-7230L form that documents Zudiker's consultation with Plaintiff, notes his review of Plaintiff's case history via "EUHR and ERMS," and contains his conclusion that "based on a review of [Plaintiff's] records," and after consulting with Plaintiff's PC, he did not "present[] with any significant cognitive deficits, nor . . . demonstrate[e] a need for

Plaintiff's claims as to Dr. Rundle, who like Zudiker, is alleged to have worked as an RJD DPP psychologist (ECF No. 13 at 2, 4), are essentially identical: he claims that on October 28, 2015, Rundle also "lie[d] [by] say[ing] [he had] no substantial adaptive support need" based on any "cognitive deficit," and found him ineligible for the DPP as a result. (ECF No. 13 at 4, ECF No. 17 at 7.) None of Plaintiff's exhibits show the result of Dr. Rundle's report, but Plaintiff's Exhibit 1, a copy of the January 5, 2016, Director's Level Decision denying his CDCR 602 Patient/Inmate Health Care Appeal, Log No. RJD HC 15053994, indicates that his appeal file and documents obtained from his Unit Health Record were reviewed by licensed clinical staff and that "[o]n October 28, 2015," he was provided a "Clark Adaptive Support Evaluation (CASE) by the DPP psychologist."[5] (ECF No. 13 at 9.) The Court will assume, for purposes of screening, that psychologist was Dr. Rundle, who classified Plaintiff as "NDD (no substantial adaptive support needs from cognitive deficit. No re-evaluation without referral)," based on a finding that Plaintiff's "self-care, activities of daily living, and accessing resources [were] self-initiated and adequately accomplished." (*Id.*) Rundle further noted no current "victimization issues" and

---

adaptive supports." (*See* ECF No. 7 at 55, 57.) Because Zudiker's Notes *were* submitted as an exhibit to Plaintiff's FAC, the Court has nevertheless considered them.

[5] The Clark Remedial Plan ("CRP"), like the ARP, was the result of a class action brought against state officials for violation of the ADA and the U.S. Constitution by present and future prisoners and parolees suffering from certain disabilities. *See Clark v. California*, 739 F. Supp. 2d 1168, 1173–74 (N.D. Cal. 2010). However, to the extent Plaintiff seeks relief under either the ARP or the CRP, "remedial orders . . . do not create 'rights, privileges or immunities secured by the Constitution and the laws' of the United States." *Hart v. Cambra*, No. C 96–0924 SI, 1997 WL 564059, at *5 (N.D. Cal. Aug. 22, 1997), *affirmed by* 161 F.3d 12 (9th Cir. 1998). Here, Plaintiff seeks monetary damages directly under the Fourteenth Amendment (ECF No. 13 at 7), but to the extent he also seeks injunctive relief requiring that he "be included in RJD DPP" under either the CRP or the ARP, he "must pursue his requests via th[ose] consent decree[s] or through class counsel." *Hawkins v. California*, No.1:09–cv–1705–MJS (PC), 2012 WL 639550, at *5 (E.D. Cal. Feb. 27, 2012) (quoting *Crayton v. Terhune*, No. C 98–4386 CRB (PR), 2002 WL 31093590, at *4 (N.D. Cal. Sept. 17, 2002)).

advised that if Plaintiff believed his disability required a "specific reasonable accommodation," which "if approved w[ould] enable [him] to access and/or participate in a program, service or activity," he could "submit a CDCR 1824" to the "Custody (Institution) Appeals Office." (*Id.*)

Finally, Plaintiff claims Deputy Director of CCHCS Defendant Lewis, like Dr. Zudiker and Dr. Rundle, also "discriminated against" him when he "lie[d] and sa[id] [Plaintiff had] no substantial adaptive support need from [a] cognitive deficit," and "exclude[ed]" him from RJD's DDP. (*Id.* at 4). As was true of his FAC, Plaintiff's SAC contains no further facts explaining Defendant Lewis's role. Instead, he merely points to his Exhibit 1—a photocopy of the CCHCS Third Level Director's Decision affirming Zudiker's and Rundle's assessments and denying Plaintiff's CDCR 602 Patient/Inmate Health Care Appeal Log No. RJD HC 15053994, issued on January 5, 2016, and signed by an unidentified official, on Defendant Lewis's behalf. (*Id.* at 9-10.)

### C. Equal Protection

As the Court noted in its December 8, 2016 Order, "[t]he Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)).

An equal protection claim may be established in two ways. First, Plaintiff may claim Defendants intentionally discriminated against him on the basis of his membership in a protected class. *See, e.g.*, *Lee v. City of L.A.*, 250 F.3d 668, 686 (9th Cir. 2001); *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167 (9th Cir. 2005). Absent any allegation that Plaintiff is a member of a protected class or that Defendants acted on the basis of his status as a member of a protected class, Plaintiff may only establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently, and that Defendants' actions against him lacked a rational basis or legitimate purpose. *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000); *San Antonio School Dist. v. Rodriguez*,

10

411 U.S. 1, 93 (1972); *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d 936, 944 (9th Cir. 2004).

To state an equal protection claim under this theory, Plaintiff must allege that: (1) he is a member of an identifiable class; (2) he was intentionally treated differently from others similarly situated; and (3) there is no rational basis for the difference in treatment. *Vill. of Willowbrook*, 528 U.S. at 564.

Plaintiff continues to claim Defendants Zudiker, Rundle, and Lewis "discriminated" against him by "lying" and failing to accurately assess him as eligible for DPP placement due to his "low education and learning disability." (ECF No. 13 at 3-5.) However, a person with a disability, whether perceived or actual, is not in a protected class under the Equal Protection Clause. *City of Cleburne*, 473 U.S. at 442; *see also Whitlow v. California*, __ F. Supp. 3d __, 2016 WL 6495512, at *6 n.6 (S.D. Cal. Aug. 26, 2016) ("Intellectual disability is not a suspect class.").

And while the Equal Protection Clause does prohibit irrational and invidious discrimination against Plaintiff if he is disabled, *Dare v. California*, 191 F.3d 1167, 1174 (9th Cir. 1999), to state a claim, he must allege plausible facts to show he was treated differently than others similarly situated, by reason, or *because of* his disability. *Lee*, 250 F.3d at 687. "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences. It implies that the decision-maker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (internal citation omitted).

Plaintiff's SAC still fails to allege any facts to suggest Defendants Rundle, Zudiker, or Lewis denied him DPP placement because he was disabled. *Lee*, 250 F.3d at 687; *Feeney*, 442 U.S. at 279. Instead, Plaintiff's SAC, exhibits, and all his supplemental motions continue to show he was denied DPP placement because his psychologists determined he did "not present[] with any significant cognitive deficits, nor . . . demonstrat[e] a need for adaptive supports." (ECF No. 7 at 55; ECF No. 13 at 9.)

Specifically, Plaintiff was determined ineligible for the DPP based on his current case factors, incarceration, treatment and work history, record of "exaggerating and manufacturing symptoms for secondary gain," ability to "clearly advocate for himself" via the submission of "75-100" handwritten 602s whose content was "sophisticated and clear," and the results of cognitive tests which "indicated a level of intellectual functioning higher than the *Clark* criteria for inclusion in DPP." (ECF No. 7 at 55). Based on these factors, Defendants found Plaintiff's "adaptive functioning continue[d] to be far superior" to that of developmentally disabled inmates. (*Id.*)

Plaintiff claims this classification was "discriminatory" because he had been previously diagnosed with "mental retardation" by the "Regional Center" in 1978, and was assessed with "pervasive developmental disorder" by a psychiatrist in 2013. (ECF No. 13 at 3-5, 27-38 & Exs. 4 & 5.) However, Dr. Zudiker's July 28, 2015, Progress Notes indicate that based on his "current observations," and Plaintiff's "lack of observed cognitive deficits or need for adaptive supports," "inclusion in to DPP" was "extremely unlikely." (ECF No. 7 at 55). Dr. Rundle reached the same conclusion when he re-evaluated Plaintiff on October 28, 2015. (ECF No. 13 at 9). And while Plaintiff obviously disagrees with his current psychological assessments, he has not alleged any plausible facts to suggest how or why those assessments were not rationally based. *See Vill. of Willowbrook*, 528 U.S. at 564; *Stilwell v. City of Williams*, 831 F.3d 1234, 1250 (9th Cir. 2016) ("Disability, like age, is subject to rational basis review, not heightened scrutiny, under the Equal Protection Clause.") (citing *City of Cleburne*, 473 U.S. at 446).

Thus, without more, the Court finds Plaintiff has again failed to allege facts to plausibly suggest Defendants Zudiker, Rundle, or Lewis intentionally treated him differently than other similarly situated inmates, *i.e.*, other prisoners with like cognitive, educational, or developmental deficits, or that they lacked a rational basis for doing so. *See Vill. of Willowbrook*, 528 U.S. at 564 (providing a "class of one" plaintiff "must allege that . . . [he] has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment"); *Dews v. Cty. of Kern*, 599 F.

App'x 681, 682 (9th Cir. 2015). Although the Equal Protection Clause ensures similarly situated persons are treated alike, it does not ensure absolute equality. *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003) (citing *U.S. v. Devlin*, 13 F.3d 1361, 1363 (9th Cir. 1994); *Ross v. Moffitt*, 417 U.S. 600, 609, 612 (1974)); *Randolph v. Nix*, No. 1:12-CV-00392-LJO, 2012 WL 1901540, at *8 (E.D. Cal. May 24, 2012) (dismissing prisoner's exclusion from DPP claims sua sponte for failing to state an equal protection claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A). And the "different treatment of unlike groups does not support an equal protection claim." *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1140 (9th Cir. 2011).

For these reasons, the Court finds Plaintiff's Second Amended Complaint, like his First Amended Complaint, must be dismissed in its entirety for failing to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). *See* 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1); *Iqbal*, 556 U.S. at 678. Moreover, because Plaintiff has already been provided several opportunities to supplement and amend his claims to no avail, the Court finds further leave to amend would be futile. *See Gonzalez v. Planned Parenthood*, 759, F.3d 1112, 1116 (9th Cir. 2014) ("'Futility of amendment can, by itself, justify the denial of . . . leave to amend.'") (quoting *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995)).

## VI. Conclusion and Order

For the reasons set forth above, the Court:

1) **DENIES** Plaintiff's Motions for Reconsideration and Appointment of Counsel (ECF Nos. 15, 21).

2) **GRANTS** Plaintiff's Motions for Leave to Amend and/or Supplement the cause of action alleged in his Second Amended Complaint (ECF Nos. 17, 23).

3) **DISMISSES** Plaintiff's Second Amended Complaint without further leave to amend for failing to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and 28 U.S.C. § 1915A(b)(1); and

//

4) **CERTIFIES** that an IFP appeal from this Order of dismissal would not be taken "in good faith" pursuant to 28 U.S.C. § 1915(a)(3). *See Coppedge v. United States*, 369 U.S. 438, 445 (1962); *Gardner v. Pogue*, 558 F.2d 548, 550 (9th Cir. 1977) (noting indigent appellant is permitted to proceed IFP on appeal only if appeal would not be frivolous).

The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED**.

**DATED: March 16, 2017**

*[signature: Cynthia Bashant]*

**Hon. Cynthia Bashant**
**United States District Judge**